(48 Misc. Rep. 235)

## MERTENS v. MERTENS et al.

(Supreme Court, Special Term, New York County. September, 1905.)

1. FRAUDULENT CONVEYANCES—SETTING ASIDE—ACTION AGAINST ESTATE—PROOF OF INDEBTEDNESS.

Under Real Property Law, Laws 1896, p. 604, c. 547, § 232, authorizing a creditor of a deceased insolvent debtor, having a claim or demand exceeding $100, to sue to set aside a conveyance of real property as fraudulent, without having obtained a judgment, the plaintiff in such an action must prove his claim in the same manner that it would have to be proved in an action at law.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Fraudulent Conveyances, § 796.]

2. SAME—INSUFFICIENCY OF ASSETS.

A father who was in partnership with two of his sons, transferred real estate to them in consideration of their agreement to pay him a certain sum per month during his life; the agreement being secured by mortgage upon the land. Thereafter the father erected some apartment houses, which immediately before his death, and after the death of one of the sons, he conveyed to the other son. During the period between the conveyance by the father to the son and the death of the former there were certain transactions between the parties appearing upon the books of the firm as loans; the subject of such loans being transfers of portions of one partner's interest in the capital to the other. At the time of the father's death the firm books showed an apparent indebtedness to the deceased son. *Held*, in an action by the deceased son's administratrix under Real Property Law, Laws 1896, p. 604, c. 547, § 232, to set aside the deed of the apartment houses as in fraud of creditors, that it was incumbent on plaintiff to prove the alleged debt to the deceased son and the insufficiency of the father's estate to meet it.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Fraudulent Conveyances, §§ 796, 804.]

3. SAME—EVIDENCE.

A father, who was in partnership with two of his sons, transferred real estate to them in consideration of their agreement to pay him a certain sum per month during his life; the agreement being secured by mortgage upon the land. Thereafter the father erected some apartment houses, which immediately before his death, and after the death of one of the sons, he conveyed to the other son. During the period between the conveyance by the father to the son, and the death of the former, there were certain transactions between the parties appearing upon the books of the firm as loans; the subject of such loans being transfers of portions of one partner's interest in the capital to the other. At the time of the father's death the firm books showed an apparent indebtedness to the deceased son. *Held* that, the object of the annuity agreement having been to give to the father the rents of the property, which were estimated to be about the amount provided for by such agreement, and which should have been regularly devoted to the use of the father, it was not necessary, in an action by representatives by the administrator of the deceased son to set aside as fraudulent the conveyance to the other son, to prove strictly that all of the rents went to the father.

4. EXECUTORS—SWORN STATEMENT—CONCLUSIVENESS.

Where an executor asserts in his sworn statement that he knows of no claims in favor of the estate other than those stated, he cannot afterwards, in an action to set aside as fraudulent a conveyance from the decedent to him, claim, for the purpose of showing that the estate was not insolvent, that other assets existed.

5. FRAUDULENT CONVEYANCES—PROOF OF INDEBTEDNESS—TRANSACTIONS BE-
TWEEN PARTNERS.
   Where, in an action to set aside a conveyance as in fraud of creditors,
it appears that the debt asserted by plaintiff was incurred in the course of
dealings between partners, and was regarded as a partnership matter,
the court cannot determine in advance of a partnership accounting what
the amount of the indebtedness is, and hence the conveyance cannot be
decreed fraudulent.
   [Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Fraudulent Con-
veyances, §§ 642, 643.]

Action by Laura E. Mertens, as administrator, against Frederick
W. Mertens and others. Judgment for defendants.

Ashbel P. Fitch, Jr., and Roger Foster, for plaintiff.
Abraham I. Elkus and Joseph M. Proskaur, for defendant Fred-
erick W. Mertens.

BISCHOFF, J. In the year 1890, Frederick W. Mertens, Sr.,
then being engaged in business with his two sons, Frederick and
Robert, under the firm name of Frederick W. Mertens & Sons, con-
veyed to these sons the real estate of which he was then possessed, and
the sons entered into an agreement, jointly, to pay him the sum of
$1,000 a month during his life; the performance of the agreement
being secured by mortgage upon the real estate thus conveyed. Dur-
ing the period whch intervened this transaction and the death of Mr.
Mertens, in 1899, he invested moneys in the erection of three apart-
ment houses, which he conveyed shortly before his death to his son
Frederick, the defendant; his other son, Robert, having died a few
months earlier. It appears that loans had been made by the sons to
the father, during this period of nine years, evidenced in the firm
books by journal entries of the loans, and by corresponding trans-
fers of the moneys loaned from the sons' to the father's capital ac-
count; the amount of the apparent indebtedness to Robert being, with
interest, $37,627.97, and this action is brought by Robert's adminis-
tratrix to set aside the conveyances of the three apartment houses by
the father to Frederick as in fraud of creditors, under section 232
of the real property law (Laws 1896, p. 604, c. 547); the cause of
action being thus dependent, for practical purposes, upon the exist-
ence of the debt to Robert and the insufficiency of the father's estate
to meet it.

The plaintiff's theory is that the debt is established by these firm
entries, as a matter independent of actual partnership transactions,
and so the proper subject of collection without a partnership account-
ing, and that the insolvency of the estate is apparent from the sur-
rogate's decree upon the accounting of the defendant Frederick, as
executor of his father, whereby the assets are found to be about
$6,000. The defendant Frederick to meet this claim of insolvency,
interposes the sons' agreement to make payments to the father at the
rate of $12,000 a year for the period of nine years, which elapsed
before the latter's death, and asserts that this annuity agreement
evidences an asset of the estate, while the plaintiff contends that the
agreement was satisfied by the application of the rents of the sons'
real estate (conveyed to them by their father) to the father's use dur-

ing the period referred to, and that this was what the parties to that agreement actually intended. Upon the issue presented as to the presence or absence of an outstanding indebtedness to the father's estate by virtue of the annuity agreement, I should be inclined to hold in favor of the plaintiff, since the inference is strong that the father had continuously enjoyed the rents of the property conveyed by him to his sons, and that this was the actual intention of the parties as to the scope of performance.

Direct proof is afforded by the testimony of the attorney, who advised the parties, and drew the papers at the time of the transactions of 1890, that the avowed purpose of the annuity agreement was to secure to the father the rents of the property, which were estimated to be about the amount named in the agreement, and so far as appears from all the evidence reasonably available to the plaintiff, the rents were devoted to the use of the father as a matter of continuous system which excluded the sons from actual participation. Had the annuity agreement been deemed a matter for strict and punctual observance, it is but reasonable to assume that some account of the condition of the annuity would have been preserved and available to the defendant as evidence. Some receipt or other paper expressing satisfaction of an installment, or payment on account of an installment, should be in existence, but nothing of the kind is produced, and the evidence of the actual use of the rents by the father with no further demand, apparently, during the life of the agreement, leads very strongly to the view that the understanding was as indicated by the testimony of the attorney, Mr. Holm.

Moreover, if further evidence be needed, it is afforded by the sworn statement in the account of the defendant Frederick, as executor, that he knew of no claims in favor of the estate other than those stated when omitting any statement of a claim upon this agreement. If the agreement were deemed enforceable for arrears of the stated installments, it is quite obvious that this individual (the sole survivor of the parties to it), would have known of the fact that there was a claim which it was his duty to assert, and there is no hardship in holding him to a position which, as a matter of fact, the evidence discloses to have been probably then well assumed. In my view of the case the fact that every penny of the rents was not traced to the father's benefit is not important. Where any record is available, the result is found to be that the father, not the sons, enjoyed these rents, and where the matter is made to rest upon probabilities in the similarity of items paid with items of withdrawal from the later bank account, in which the rents were deposited (the checks and stubs not being in existence), the same system of a continuous use of these rents by the father is clearly indicated. My conclusion upon this question must be that the annuity agreement was satisfied in accordance with the parties' practical construction of it, but still I cannot take the case to be sufficiently supported to justify the relief sought by the plaintiff.

Granting that the annuity agreement does not suffice to increase the estate of the defendant's grantor of the premises is suit, constructive fraud in the conveyances is still an open question, while

the amount of the grantor's interest in the firm of Frederick W. Mertens & Sons remains undetermined. The value of this interest was expressly excluded and excepted from the finding of the value of Mr. Mertens' estate by the surrogate's decree and it is impossible for the court to determine in this action what the amount of this outstanding asset may be, in advance of an adjudication in an action properly brought for the settlement of the partnership accounts. The plaintiff's case depends upon proof of fraud, and where the fraud sought to be proven arises from an asserted insufficiency of the grantor's assets to meet the creditor's demand, without any previous resort by the creditor to the means afforded by law for the collection of the debt, as in the present case, the actual insufficiency of the assets becomes an essential fact which the plaintiff must establish or fail in the action. By amendment of the answer the plaintiff's allegation of the value of the estate was placed in issue, and there is no admission of the fact that the testator died insolvent. The accounting executor's estimate of the value of the testator's interest in the firm as $6,799.02 was not accepted by the surrogate when the parties were before him, and cannot well be given the force of an admission by the defendant individually for the purposes of this action. Had the parties in interest been content to adopt the executor's estimate of the value of this asset, the present difficulty would not be encountered, but the surrogate, when fixing the value of the estate, declined to express this proposed item in the decree, presumbly because the executor's estimate did not please the parties, and the usefulness of the estimate, therefore, failed. As the matter stands, this estimate is no proof of value, and there is nothing before me which can suffice for a finding that Mr. Mertens' estate is insufficient to meet the debt which is the basis of this action.

Again, it would appear that the very debt itself is too closely identified with the partnership relations, existing between the debtor and creditor, to permit of its independent enforcement. These loans had their foundation in the condition of the capital account between the partners, the subject of the loans being a transfer of so much of one partner's interest in the capital to the other, which transactions were noted as loans in the journal entries, and again in the periodical inventories of the firm. Unless the borrower drew upon his capital account to such an extent as to reduce it below the amount of the loans, the matter was one which needed no adjustment other than the writing back of so much capital to the lender, but whether the borrowing partner did withdraw capital to this extent, and, if so, whether he devoted the withdrawals to possible uses of the partnership, are questions which involve the examination of the partnership accounts for a proper determination. One partner may sue another at law upon his express or implied promise, provided the transaction is distinct from the partnership accounts, and does not involve their consideration (Middleton v. Twombly, 125 N. Y. 520, 524, 26 N. E. 621), but the whole question here rests upon the condition of the accounts, and no indebtedness is provable without them. From the nature of the loans and the manner of their recording, it is quite apparent that the parties treated them as nothing other than partner-

ship matters, and the debt upon which the plaintiff sues is, in effect, but an item on one side of a partnership account. It is suggested by the plaintiff that the strict rule which prohibits one from suing his partner at law does not apply to this action, which is in equity; but this distinction overlooks the nature of an equitable action of this character.

The statute, Real Property Law (Laws 1896, p. 604, c. 547, § 232) permits "A creditor of a deceased insolvent debtor having a claim or demand exceeding one hundred dollars against such deceased," to maintain such an action as this "without having first obtained a judgment on such claim or demand; but the same, if disputed, may be established on the trial." For the purposes of the establishment of the claim or demand, the statute has not given the creditor any greater rights than a judgment creditor would possess. The effect is simply that judgment upon the claim need not be first recovered; but the existence of the claim is to be tested by no more favorable standard than would obtain in an action brought to establish it in the first instance. The debt in suit is a common-law demand, or nothing, and the fact that the ultimate relief under the statute is to be administered in a proper case by a court of equity, does not affect the manner in which the claim must be established.

For the reasons stated, there should be judgment for the dismissal of the complaint, but without costs.

Complaint dismissed, without costs.